


IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

Thomas M. Utterback,
Plaintiff,

v.

Case No.: 3:15cv163 HTW-LRA

Trustmark National Bank and
Hand Arendall LLC,
Defendants.

**Jury Trial Demanded**

______________________________/

## COMPLAINT

Plaintiffs Thomas M. Utterback complains that Defendants Hand Arendall LLC and Trustmark defamed his character; tortiously interfered with his business relationships, and abused processes of law in order to extort and intimidate Utterback and prejudice the courts. For his cause of action against Defendants, Utterback states:

## JURISDICTION

1. This is a civil action for damages in excess of $75,000.00. This Court has jurisdiction of the claim herein pursuant to 28 U.S.C. §1332 in that plaintiff is a Missouri resident and Defendants Hand Arendall and Trustmark are Mississippi residents.

2. Venue here is proper under 28 U.S.C. §1391(b)(1) in that Defendants are residents of the State of Mississippi in the district in which this Court is located. Hand Arendall LLC is located at 1300 Highway 51, Madison, MS 39110. Trustmark's corporate headquarters is located at 248 East Capitol Street, Jackson, MS 39201.

## THE PARTIES

3. Plaintiff Thomas M. Utterback ("Utterback") is a citizen and resident of the State of Missouri. In 1998 Utterback pleaded guilty to money laundering in the United States District

Court for the Eastern District of Missouri, receiving a 36-month sentence. Also, in 1998, Utterback surrendered his law license to the Missouri Supreme Court after winding up his law practice matters, all in coordination with the Office of the Chief Disciplinary Counsel's office.

4. Utterback served 25 months at FPC Eglin (being released in November 2000) and was discharged from supervised release in March 2003 after completing two (2) years of a 5-year supervised release period. In June 2003, Utterback moved to Okaloosa County, Florida, and moved back to Missouri in February 2015, after the events described in this lawsuit were over. At all times relevant herein, Utterback was the manager for CCB, L.L.C. ("CCB") during the course of the litigation described herein.

5. Trustmark Corporation is a Mississippi banking corporation doing business as Trustmark National Bank, OCC Charter No. 10523. Its registered agent is T. Harris Collier III, 248 East Capitol Street, Jackson, Mississippi 39201. Trustmark acquired BankTrust through an FDIC approved merger in February 2013 and, in doing so, became the successor corporate entity to BankTrust and liable for BankTrust's wrongful acts.

6. Hand Arendall LLC is an Alabama limited liability company, whose primary address is 3000 First National Bank Building, Mobile, Alabama 36602. However, Hand Arendall maintains an office, as alleged above, in Madison, MS.

**RELEVANT NON-PARTIES**

7. Attorneys George M. Walker and Paul T. Beckmann are residents of Baldwin County, Alabama, and are licensed as attorneys in Alabama and Florida. They are members of the Hand Arendall Firm and at all times relevant herein acted for and on behalf of BankTrust/Trustmark (hereinafter "Trustmark") and as agents and representatives of their law firm, Hand Arendall.

**ALLEGATIONS COMMON TO ALL COUNTS**

8. At all pertinent times Walker and Beckmann represented Trustmark in the following cases:

a. Case No. 2009 CA 001573 in the Circuit Court of Walton County, Florida (the "state case"). In that lawsuit, BankTrust sought to foreclose on certain Walton County properties owned by CCB, L.L.C., to obtain judgment on the note CCB executed in BankTrust's favor, and to obtain judgment on the personal guarantees of the CCB note by Dr. Charles & Mrs. Cynthia Barniv and Dr. Bruce Witkind. After the federal district court stayed CCB's federal suit, CCB, Barnivs and Witkind counterclaimed in fraud, fraud in the inducement, breach of fiduciary duty, and other related legal theories.

b. Case No. 3:10-CV-228-LC/EMT in the United States District Court, Northern District of Florida, Pensacola Division (the "federal case"). In this lawsuit, CCB, the Barnivs, and Witkind brought their fraud and fraud in the inducement related claims against BankTrust. As alleged above, after the federal district court stayed their complaint in this case under *Colorado River*, CCB, the Barnivs and Witkind brought their claims against BankTrust in the state case listed in sub-paragraph 'a.' above.

c. Case No. 3:12-cv-394-MCR-EMT in the United States District Court, Northern District of Florida, Pensacola Division (the "garnishment action'). This was a wrongful garnishment lawsuit filed by the Barnivs and Witkind against BankTrust.

d. Case Nos. 1D11-2375, 1D11-3891, 1D11-6828, 1D12-1774, 1D12-2492, 1D12-6181, 1D13-0154, 1D13-3374, and 1D14-0692 in Florida's First District Court of Appeal, which involved petitions for interlocutory writs and two appeals emanating from the state case.

e. Case Nos. 11-11459, 13-12756, 13-13302, 14-12864 in the United States Court of Appeals for the Eleventh Circuit, which cases emanated from the federal cases listed in subparagraphs 'b.' and 'c.,' above.

9. At all pertinent times herein, Utterback was the CCB Manager, hired by CCB/Barnivs/Witkind ("CCB") in June 2010, to manage the litigation on CCB's behalf by hiring, supporting, and supervising attorneys, and to investigate factual events.

10. Early in the state and federal lawsuits, Defendants Walker and Beckmann (hereinafter, inclusively "Walker" unless stated otherwise) decided to make Utterback's status as an ex-felon and former attorney a primary issue in discovery. Then, after failing to intimidate either Utterback or his business associates, Walker began to publish the defamatory allegations listed below in motions and briefs in order to prejudice said courts and in order to punish Utterback economically and socially. Initially, Walker pursued a series of questions in November 2010, during the depositions of Barniv and Witkind in the Federal Case No. 3:10 CV 228, wherein Walker confronted Barniv and Witkind with the fact that Utterback was an ex-felon and a disbarred lawyer; and wherein Walker implied and suggested that Utterback was violating Florida law by practicing law without a license.

11. On November 9, 2010, Walker filed a motion to compel in the federal case in which he alleged that "BankTrust is concerned that Mr. Utterback is doing nothing more than 'managing' this litigation without a license to do so."

12. On February 17, 2011, Walker/Beckmann filed a complaint with the Florida Bar alleging the same matters Walker put into the various pleadings referred to herein. In their complaint (signed by Beckmann), Walker/Beckmann suggested to the Florida Bar that it should investigate their complaint by obtaining: a) the contract between Utterback and CCB; b)

Communications between Utterback and CCB's principals; c) Communications between Utterback and the Liberis & Associates law firm; d) Communications between Utterback and Attorney Jeffrey Jensen; e) Utterback's account with Westlaw and/or any other research provider; and f) Utterback's computer hard drive.

13. On December 21, 2012, in Walker's memorandum in opposition to Barnivs/Witkind's motion to stay discovery in the federal garnishment action, Walker wrote that "BankTrust believes that Mr. Utterback has continued to work as an unlicensed lawyer in this case by preparing pleadings, conducting legal research, and advising plaintiffs and their counsel as to legal strategy, for compensation."

14. On November 22, 2011, Walker filed a motion to compel in the state case in which he identified Utterback to the trial judge as a "disbarred Missouri attorney who may or may not – be providing defendants with legal advice regarding this matter. If defendants are relying on the advice of a disbarred attorney in pursuing their claims, BankTrust – and the Court – is entitled to know." In fact and as a matter of law, the court was not "entitled to know."

15. On March 19, 2012, Walker responded to CCB's motion for protective order questioning Utterback's job as CCB manager although Walker never alleged that Utterback had any involvement in the acts taken by the parties in 2004-2006, which is the primary timeframe of the acts alleged in Trustmark's foreclosure and in the counterclaims alleged by CCB, and Barnivs/Witkind. In the response, Walker again reminded the trial court that Utterback was convicted of federal felony charges in 1998 and expressed BankTrust's "fear that Mr. Utterback is continuing to practice law…." and that Defendants' counsel would have to be disqualified if they facilitated Utterback's alleged malfeasance.

16. On March 23, 2012, Walker filed a motion to dismiss in the state case wherein Walker repeated the allegations described in paragraph 11, above.

17. On March 28, 2012, Walker filed BankTrust's response in opposition to CCB's motion to reconsider wherein Walker again stated that "BankTrust believes that he [Utterback] has been engaged in the unlicensed practice of law in this case.....".

18. This litigation tactic intensified when Walker filed his Response in Opposition to CCB's Petition for a Writ of Certiorari on May 24, 2012 Case No. 1D12-1774, in the First District Court of Appeal. Walker, in his argument to the First DCA, sought to justify the trial court's wrongful invasion of privilege enjoyed between Utterback and his business colleagues, and their attorneys by writing that, "BankTrust believes that Mr. Utterback's activities in 'managing' the litigation may well have involved the unlicensed practice of law and, if so, such conduct will or may preclude Petitioners' current counsel from continuing to represent them in this case."

19. Walker went on in his Response to confirm that certain of BankTrust's requests for production of documents were designed to elicit documents that would prove that Utterback "is or has been engaged in the unlicensed practice of law...". At page 14 of his Response, Walker accused Plaintiffs of objecting to producing any legal research conducted by Utterback because Utterback presumably "has in fact been engaged in the unlicensed practice of law."

20. On February 7, 2013, the Florida Bar closed their file on the Walker complaint by accepting a 'cease and desist' affidavit in which Utterback affirmed his compliance with Florida law. The Bar did confirm to Utterback it believed that he had been involved in instances of the practice of law without a license. Utterback disagreed and sought a hearing. However, after several communications, the matter was resolved by the Bar agreeing to accept Utterback's

affidavit to close the file. Thus, Walker published his defamatory allegations during and after he made his complaint to the only entity with jurisdiction to pursue and resolve his complaints, and continued to publish his defamatory allegations after the Florida Bar closed its file on Utterback. At no time did the Florida Bar ever demand the privileged communications between Utterback and his attorneys and business associates.

21. On February 20, 2013, in 1D13-0154 (CCB's petition for an extraordinary writ), Walker filed a motion for appellate attorneys' fees. In that motion Walker accused Petitioners (presumably CCB, the Barnivs, and Witkind) and their lawyers from taking "counsel from an individual [Utterback] not licensed to practice law in Florida or anywhere else." Walker went on to describe Utterback's 1998 guilty plea and that Utterback's "third and most recent application for reinstatement was rejected by the State Bar of Missouri in 2009."

22. On March 11, 2013, in that same appellate case, Walker filed a response to CCB's motion to strike wherein he stated that "Petitioners' arguments regarding Mr. Utterback are unintelligible, but Respondent BankTrust believes they are arguing that this Court should not consider Mr. Utterback's unlicensed involvement in this case because that is not an issue raised in *their* Petition." Then, Walker went on to allege that Petitioners "have voluntary taken counsel from a man not licensed to practice law in the State of Florida – or anywhere else."

23. Walker's allegations, as summarized in the above paragraphs, had no relation to any of the trial court or appellate proceedings.

24. At no time did Walker ever file a motion to disqualify Utterback from his status as his attorneys' client/party in the state and appellate proceedings.

25. At no time did any of the trial or appellate judges ever grant Walker or his client any relief based on Walker's continuous stream of defamations that Utterback was practicing law without a license.

26. Even if Walker came within the litigation privilege, he excessively published his defamatory allegations about Utterback and, by doing so, lost the privilege.

27. Further, Walker knew that the Florida Bar, as the official arm of the Florida Supreme Court, is exclusively vested with the authority to prosecute claims for the unauthorized practice of law and that the trial and appellate courts to which he published his defamatory statements had no jurisdiction to determine if Utterback was a lawful client of his attorneys, as Manager of CCB; or whether or not Utterback was practicing law without a license.

28. In all instances and circumstances of Walker's defamatory publications, Utterback's status as CCB Manager or his activities as CCB Manager were not at issue or related to any issue in the litigation or the specific matters being adjudicated. Thus, Walker volunteered his defamatory conclusions intentionally in order to prejudice the court and intimidate Utterback, Barnivs/Witkind, and their attorneys.

29. Walker's publications of the defamations were made to judges who were not charged with adjudicating Utterback's status as CCB's Manager or whether or not he was practicing law without a license. Likewise, Walker knew that employees of Missouri's Office of the Chief Disciplinary Counsel would have access to the public court records, relieving Walker of the need to communicate with them directly and allowing him to use the litigation privilege as a shield to avoid responsibility for his malicious acts.

**Count I: Defamation**

30. Utterback realleges and incorporates by reference the allegations of paragraphs 1-29, above.

31. By falsely accusing Utterback of practicing law without a license, Walker accused Utterback of a third degree felony. §454.31 Fla. Stat. Thus, Walker's publication of this accusation constitutes libel and defamation per se.

32. Defendant published the accusations against Utterback maliciously and intentionally with a willful and wanton disregard for Utterback, his rights, and the truth; without reasonable care as the truth or falsity of the accusations; and with a willful, wanton and malicious desire to injure Utterback and his reputation both in Florida and in the Missouri legal community where Walker knows that Utterback has petitioned and intends to petition the Missouri Supreme Court for reinstatement as a practicing attorney.

33. Although Florida's litigation privilege essentially provides legal immunity for actions that occur in judicial proceedings, the litigation privilege is qualified and limited to defamatory accusations relevant to the judicial proceeding in which the libelous accusation is published; and, even if relevant at some point in the litigation, the litigation privilege may be lost by excessive publication.

34. As a matter of law and fact, the libelous accusation that Utterback was practicing law without a license is not relevant to the state litigation, untrue, and published by Walker with express malice.

35. Thus, Walker and Beckmann, on behalf of their law firm, Hand Arendall, and its client, Trustmark, a) excessively published b) false allegations c) that they knew were false and over which the trial and appellate courts had no jurisdiction to ascertain the veracity of the

defamatory allegations, 4) with the intent to damage Utterback's reputation and to harm him economically; and 5) that Walker/Beckmann published the defamatory allegations intentionally, maliciously, and in the cynical belief that they could hide behind the "litigation privilege."

36. Because Walker's defamation was per se, the law presumes that punitive damages may be assessed by a jury without any finding of an amount of compensatory damages.

**WHEREFORE**, Utterback demands judgment against Defendants Hand Arendall LLC, and Trustmark for damages, punitive damages, costs, interest, and such other relief in law or equity that this Court deems just and proper.

## Count II: Invasion of Privacy/Outrage

37. Utterback realleges and incorporates by reference the allegations of paragraphs 1-29, 31-32, & 34 above.

38. It highly offensive to a reasonable person, particularly to a person acting within the scope of his authority and position as a client in a matter of litigation to be accused of practicing law without a license.

39. Likewise, interfering with the attorney-client relationship of the opposing parties in the litigation is an outrageous act that, if not punished, and if repeated, would threaten the foundations upon which the relationship of the client to his/her attorneys, and vice versa, are based.

40. Defendants had knowledge that the Florida Bar had exclusive jurisdiction of handling complaints regarding the practice of law without a license, the falsity of the specific accusations Defendants made in the documents they filed with the various courts, and the false light in which Utterback would placed.

41. Because Walker's invasion of Utterback's privacy was intentional and malicious, and inflicted mental suffering upon Utterback, Defendants are liable for punitive damages as may be assessed by a jury without any finding of an amount of compensatory damages.

**WHEREFORE**, Utterback demands judgment against Defendants Hand Arendall LLC, and Trustmark for damages, punitive damages, costs, interest, and such other relief in law or equity that this Court deems just and proper.

**Count III: Tortious Interference with Business Relationships**

42. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1-29, 31-32, 34, & 40 above.

43. Utterback is a consultant who provides business consultation services to non-attorneys and to attorneys, primarily in support of an attorney's litigation needs. Utterback has had advantageous business relationships with his clients. Likewise, Utterback has had a continuous relationship with the Missouri Supreme Court, through the Office of the Chief Disciplinary Counsel, in his efforts to obtain reinstatement to the Missouri Bar.

44. Walker had knowledge of Utterback's advantageous business relationships with his clients, business associates, and of Utterback's efforts to achieve reinstatement with the Missouri Bar.

45. Walker intentionally and unjustifiedly interfered with Utterback's business relationships with his existing and prospective clients by using the civil justice system to defame Utterback, callously believing that he could manipulate the litigation privilege to shield himself from liability.

46. Walker knew that his attacks on Utterback in the federal and state trial and appellate courts has no connection to the litigation, but chose to adopt a "win at all costs"

approach to the litigation and consciously decided to punish Utterback for daring to use his experience and knowledge to expose BankTrust/Trustmark's fraudulent conduct; and to use Utterback's 1998 criminal conviction and the surrender of his Missouri law license in the same year to prejudice Utterback's clients, his attorneys, the judges in the matters of litigation, and the employees of Missouri's Office of the Chief Disciplinary Counsel.

47. Walker's conduct has caused Utterback to suffer damages that exceed $450,000 in compensatory damages. Utterback alleges that the proof of Walker/Beckmann's intentional, malicious conduct coupled with evidence of the net worth's of Walker, Beckmann, Hand Arendall, and Trustmark will support a punitive damages award that would exceed Five Million Dollars ($5,000,000) because where the fact finder determines that at the time of injury the defendant had a specific intent to harm the claimant and determines that the defendant's conduct did in fact harm the claimant, there is no cap on punitive damages.

**WHEREFORE,** Utterback demands judgment against Defendants Hand Arendall LLC, and Trustmark for compensatory damages, punitive damages, costs, interest, and such other relief in law or equity that this Court deems just and proper.

**Count IV: Abuse of Process**

48. Plaintiffs reallege and incorporate by reference the allegations of paragraphs1- 29, 31-32, 34, 40, and 44-47, above.

49. In complaining to the Florida Bar, while at the same time making continuous attacks on Utterback in the matters of litigation, Walker made an illegal, improper, or perverted use of the Florida Bar complaint process as well as the litigation process.

50. Trustmark's ulterior motives or purposes in exercising such illegal, improper, or perverted use of these processes included the malicious intimidation of Utterback, his business

associates and their attorneys; and the desire to extort privileged information from Utterback, his business associates, attorneys and former attorneys, and to maliciously use the Florida Bar investigative process to extract privileged information that Walker could not get through the litigation process.

51. As a result of BankTrust's abuse of the Florida Bar complaint process and the litigation process, Utterback suffered damage as stated and as incorporated into this count.

52. Further, the degree of reprehensibility of Walker's misconduct, taken with a desire to harm Utterback and interfere with the orderly processes of the Florida Bar and discovery and trial, mandates that punitive damages be awarded against Walker's Firm, Hand Arendall and the Firm's client, Trustmark.

**WHEREFORE**, Utterback demands judgment against Defendants Hand Arendall LLC, and Trustmark for compensatory damages, punitive damages, costs, interest, and such other relief in law or equity that this Court deems just and proper.

Respectfully submitted,

Thomas M. Utterback
15325 Cambridge Cove Way
Chesterfield, MO 63017
Ph: 850.582.8525
Email: tom@masbackllc.com
*Pro Se* Plaintiff